**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KIMBERLY D. PRICE,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Civ. No.: MJM-23-2043** |
| **AMAZON RETAIL LLC d/b/a AMAZON FRESH,** | * | |
| **Defendant.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Kimberly D. Price ("Plaintiff") commenced this civil action against defendant Amazon Retail LLC d/b/a/ Amazon Fresh ("Defendant"), alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, as well as unwarranted invasion of personal privacy. ECF 26 (Am. Compl.). Defendant has filed a Motion to Dismiss (the "Motion"), ECF 27, which is fully briefed and ripe for disposition. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Defendant's Motion will be granted, and the Amended Complaint will be dismissed.

## I. FACTUAL BACKGROUND

Plaintiff, a Black woman in her mid-50's, began working for Defendant in September 2020. Am. Compl. ¶ 7. She began as a driver and then "transitioned into working as front-end help." *Id.*

Plaintiff alleges that despite her past honors at other companies, and praise from customers and management, she was singled out and subjected to a hostile work environment. *Id.* ¶¶ 10–13. On one occasion, when a coworker acted aggressively toward Plaintiff during a disagreement, management responded by sending Plaintiff home. *Id.* ¶ 14. On another occasion, Plaintiff greeted

a manager "good morning" and was questioned on why she was so cheerful. *Id.* ¶ 10. On July 7, 2022, a customer told Plaintiff that a cashier warned him not to speak with Plaintiff and repeated several false statements that the cashier had made about her. *Id.* ¶ 15. On September 16, 2022, a fellow employee told Plaintiff that "she needed to watch her back" in light of rumors that Plaintiff got a manager fired. *Id.*

On April 25, 2023, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), describing the July 7, 2022, and September 16, 2022, incidents. Am. Compl. ¶ 15; EEOC Charge, ECF 35-1. Plaintiff insisted on confidentiality throughout the EEOC investigation process. *Id.* ¶ 17.

Plaintiff noticed a change in how some managers would treat her following her EEOC complaint. Am. Compl. ¶ 19. On one occasion, managers questioned her about the length of a bathroom break and accused her of manipulating her break time. *Id.* Plaintiff also alleges that a manager mocked her in front of her co-workers, that management attempted to limit Plaintiff's hours, that she was undermined by a supervisor, and that a manager once raised his hands aggressively toward her. *Id.* ¶¶ 22–25. These incidents occurred "over a prolonged period," and "contribut[ed] to a pattern of discrimination and retaliation." *Id.* ¶ 27.[1] Plaintiff states that, although she has followed Defendant's policies for reporting and resolving issues, her concerns have not been taken seriously. *Id.* ¶¶ 29–30.

## II. PROCEDURAL BACKGROUND

On April 25, 2023, Plaintiff filed a charge of discrimination based on genetic information and retaliation with the EEOC. ECF 35-1. On May 1, 2023, the EEOC issued Plaintiff a Notice of

---

[1] According to the EEOC record of Plaintiff's intake interview, these incidents began in July 2022, *before* she filed any complaint with the EEOC, ECF 35-1 at 32–33; *see also* Am. Compl. ¶ 16. The interview report also notes it was another employee and not a manager who raised his hands toward Plaintiff. ECF 35-1 at 32.

Right to Sue. *Id.* On July 29, 2023, Plaintiff filed an initial complaint against Defendant. ECF 1. On November 14, 2023, Plaintiff filed an Amended Complaint. ECF 26. On November 28, 2023, Defendant filed a Motion to Dismiss the Amended Complaint, ECF 27, to which Plaintiff filed a Response in Opposition, ECF 28, and Defendants filed a Reply in Support, ECF 35.

## III. STANDARD OF REVIEW

Under Rule 8(a)(2) of Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may file a motion to dismiss a complaint for failure to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted).

Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court may consider, at the motion to dismiss stage, documents "explicitly incorporated into the complaint by reference," "those attached to the complaint as exhibits," and "document[s] submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as [they were] integral to the complaint and there is no dispute about [their] authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). "A document is integral to the complaint if its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 249 (D. Md. 2023) (cleaned up). Courts may also take judicial notice of adjudicative facts under Rule 201 of the Federal Rules of Evidence,[2] *id.* (citation omitted), such as EEOC charges and decisions in employment discrimination cases, *see Taylor v. Go-Getters, Inc.*, Civ. No. ELH-20-3624, 2022 WL 1127902, at *7 (D. Md. Apr. 15, 2022) (citing *Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021)).

---

[2] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. Rules of Evid. 201(b).

## IV. ANALYSIS

The Amended Complaint alleges employment discrimination based on race in Count I, retaliation in Count II, and hostile work environment in Count III, all in violation of Title VII.[3] Additionally, in Count IV, Plaintiff alleges unwarranted invasion of privacy in violation of Maryland law. Defendant moves to dismiss the Amended Complaint in its entirety. The issues presented in the Motion are whether Plaintiff's Title VII claims are barred by her failure to exhaust her administrative remedies, and whether Plaintiff states a claim for relief in each count. ECF 27-1 & 35. The Court will address each issue in turn.

### A. Exhaustion of Administrative Remedies[4]

The EEOC has initial enforcement responsibility over Title VII claims. *See Balas v. Huntington Ingalls Indus., Inc.,* 711 F.3d 401, 406–07 (4th Cir. 2013); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005). Accordingly, an employee alleging a Title VII violation must first file a charge with the EEOC before attempting to bring suit in court. *Balas*, 711 F.3d at 406 (citing 42 U.S.C. § 2000e–5(e)(1)). "A[n EEOC] charge is acceptable only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Chacko*, 429 F.3d at 508 (quoting 29 C.F.R. § 1601.12(b)). Once a charge is filed, the EEOC investigates the matter and provides notice to the employer. *Id.* (citing 42 U.S.C. § 2000e–5(b)).

---

[3] In Count I, Plaintiff also alleges employment discrimination based on age. Am. Compl. ¶ 36. As Defendant points out, *see* ECF 27-1 at 11 n.2, age is not a protected class or characteristic under Title VII. Title VII prohibits an employer from discriminating against an individual with respect to employment based upon the individual's race, color, religion, sex, or national origin, and from retaliating against an individual for engaging in activity protected by Title VII. *See* 42 U.S.C. § 2000e–2(a)(1) (anti-discrimination provision); § 2000e–3(a) (anti-retaliation provision). Plaintiff's age discrimination allegation in Count I is not cognizable under Title VII. For this reason and additional reasons explained *infra*, any age discrimination claim Plaintiff intended to assert must be dismissed.

[4] The requirement to first exhaust administrative remedies with the EEOC does not apply to Count IV, a claim for common law unwarranted invasion of personal privacy.

Even after an employee has exhausted the administrative process and receives permission to sue, she is procedurally barred from bringing any Title VII claims that "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof . . . ." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). "The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 384 (4th Cir. 2022) (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005)). The allegations in the EEOC charge "generally operate to limit the scope of any subsequent judicial complaint." *Chacko*, 429 F.3d at 509 (citation omitted). "[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Id.* Courts must keep also in mind, however, that EEOC complaints are made "by those unschooled in the technicalities of formal pleading," and must construe them with the "utmost liberality." *Hart v. Broadway Servs., Inc.*, 899 F. Supp. 2d 433, 440 (D. Md. 2012) (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). "A federal court may hear a claim that was not presented to the EEOC so long as it is reasonably related to plaintiff's EEOC charge and can be expected to follow from a reasonable administrative investigation." *Faulkenberry*, 670 F. Supp. 3d at 252 (cleaned up); *see also Cowgill*, 41 F.4th at 384.

Plaintiff's EEOC charge in the instant case alleges that Defendant engaged in retaliation and discrimination based on genetic information. ECF 35-1. The narrative portion of the charge states:

> On July 7, 2022, I was checking out one of my customers Ron Jenkins. The customer informed me that Sharon( last name unknown), cashier told the customer not to talk to me. He told me she was badmouthing me.
>
> On September 16, 2022, Bernice, employee, walked up to me and said, is your name Kim. Bernice stated, you need to watch you back.

> I stated, what do you mean I need to watch my back.Bernice stated there was rumors that I got an employee, fired.

*Id.*[5]

Plaintiff's discrimination claims in Counts I and III of the Amended Complaint exceed the scope of the foregoing EEOC charge. In Count I, Plaintiff alleges employment discrimination based on race, *see* Am. Compl. ¶ 36, and the Court construes the allegation of a "discriminatory" work environment in Count III as similarly alleging a hostile work environment based on race, *see id.* ¶ 48. The EEOC charge does not allege race discrimination but instead alleges discrimination based on genetic information.[6] Even construing the EEOC charge liberally, it would not be reasonable to expect claims of race-based discrimination or hostile work environment to have stemmed from the investigation of an EEOC charge that makes no mention of race and does not allege race discrimination. *Cf. Chacko*, 429 F.3d at 509 ("[T]he allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges [in a complaint] a broader pattern of misconduct.") (citing *Dennis*, 55 F.3d at 153, 156–57); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002) ("[An] [a]dministrative investigation of . . . color and sex discrimination, however, could not reasonably be expected to occur in light of Bryant's sole charge of race discrimination."). Lacking any allegation or indication of race discrimination, the EEOC charge in this case fails to place Defendant on notice of Plaintiff's claims that it violated Title VII. Thus, Plaintiff failed to exhaust her administrative remedies with regard to her claim of race

---

[5] The EEOC charge is quoted as originally written.

[6] The Genetic Information Nondiscrimination Act ("GINA") "prohibits discrimination on the basis of genetic information with respect to health insurance and employment." *Kumar v. First Abu Dhabi Bank USA N.V.*, Civ. No. ELH-20-1497, 2020 WL 6703002 (D. Md. Nov. 13, 2020) (cleaned up); *see also* 42 U.S.C. § 2000ff-1(a). "Genetic information" is defined as "information about (i) [an] individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." 42 U.S.C. § 2000ff(4)(A). The Amended Complaint does not allege discrimination based on genetic information nor assert any claim for relief under GINA.

discrimination in Count I and any claim of race-based discriminatory hostile work environment in Count III. These claims will be dismissed.[7]

However, Plaintiff's allegations of retaliation and retaliatory hostile work environment shall not be dismissed for failure to exhaust.[8] Plaintiff alleges that she "was subjected to unfair treatment as a direct result of her filing an EEOC charge and that such unfair treatment was indicative of retaliation." Am. Compl. ¶ 21. "A plaintiff raising a claim of retaliation for filing a previous EEOC charge need not exhaust administrative remedies on that claim but instead may raise it for the first time in federal court." *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 169 (D. Md. 2022) (citing *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992)). This rule recognizes that a Title VII lawsuit may extend to retaliation stemming from the EEOC charge while it is pending before the EEOC, and it would be impractical to require the employee to file a *second* EEOC charge for retaliation before she can file suit in court. *See id.* (citing *Nealon*, 958 F.3d at 590).

B. Retaliation

Employers are prohibited under Title VII from retaliating against an employee for reporting discrimination in the workplace. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015); *see also* 42 U.S.C. § 2000e–3(a). A prima facie case of retaliation requires a plaintiff to

---

[7] Any age discrimination claim Plaintiff intends to assert in Count I or Count III, *see* Am. Compl. ¶ 36, must be dismissed on the same basis. It is readily apparent that Plaintiff did not exhaust her administrative remedies on any such claim. Plaintiff's EEOC charge makes no indication of age discrimination. *See generally* ECF 35-1. Furthermore, age is not a protected category under Title VII. In her opposition to the Motion, Plaintiff does not argue that she has exhausted or stated a plausible employment discrimination claim based on age. Any age discrimination claim Plaintiff intended to assert is dismissed.

[8] The Court construes Count III as asserting claims for both discriminatory *and* retaliatory hostile work environment under Title VII. *See* Am. Compl. ¶ 48 ("That the actions and unlawful conduct of Defendant and its agents created and perpetuated a hostile, *discriminatory*, *retaliatory*, and unhealthy work environment . . . .") (emphasis added).

establish "(1) that she engaged in a protected activity, (2) that her employer took an adverse action against her, and (3) that there was a causal link between the two events." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022) (citation omitted). An adverse action is such that "a reasonable employee would have found the challenged action[s] materially adverse," that is, sufficient to dissuade a reasonable employee from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2005); *see also Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 447 (D. Md. 2022) ("'[D]ischarge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion' constitute adverse actions.") (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999), *abrogated on other grounds by Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024)).

The required causal link can be established "by 'show[ing] that the adverse act bears sufficient temporal proximity to the protected activity,' or by showing 'the existence of facts that suggest that the adverse action occurred because of the protected activity,' or a combination of the two." *Laurent-Workman*, 54 F.4th at 218–19 (quoting *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021)). "'[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action' may establish causation only if it is 'very close.'" *Id.* at 219 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Plaintiff engaged in a Title VII protected activity by filing an EEOC complaint against Defendant. *See Pitts v. Balt. Police Dep't*, Civ. No. RDB-22-1404, 2023 WL 3158705, at *7 (D. Md. Apr. 28, 2023). Plaintiff alleges that, prior to the EEOC complaint, she made "prior attempts" to address "issues" she had with "her immediate supervisors and HR representatives . . . ." Am. Compl. ¶ 16. Without further detail, it is unclear whether these "attempts" constituted Title VII protected activity. Notwithstanding, Plaintiff fails to allege a plausible causal link between

protected activity and any materially adverse action by Defendant. Plaintiff alleges that she "noticed a change in the way some managers treated her after she filed" the EEOC complaint, *id.* ¶ 19, and she "was subjected to unfair treatment as a direct result of her filing" the EEOC complaint, *id.* ¶ 21. But Plaintiff does not allege sufficient facts to support a reasonable inference that Defendant took any materially adverse action against her that closely followed, or resulted from, her EEOC complaint. Plaintiff alleges that, after her EEOC complaint, various retaliatory incidents "took place over a prolonged period," *id.* ¶ 27, but without further detail as to when the alleged acts of retaliation occurred, it cannot be reasonably inferred that they occurred close in time to, or were caused by, the EEOC complaint.

As examples of retaliatory conduct she suffered, Plaintiff alleges that she was questioned and accused by management about "manipulating break time" and that a manager "mocked" her in front of co-workers. *Id.* ¶¶ 19, 21. Neither of these actions rises to the level of a materially adverse action. *See Maron v. Va. Polytechnic Inst. & State Univ.*, 508 F. App'x 226, 230 (4th Cir. 2013) ("'[P]etty slights, minor annoyances, and simple lack of good manners' do not qualify as adverse actions, because such actions typically would not deter an employee from complaining.") (quoting *Burlington N.*, 548 U.S. at 68). Plaintiff also alleges that management "attempted to limit" her work hours and that one supervisor "undermined" her. Am. Compl. ¶¶ 23, 24. Without further detail—i.e., whether Plaintiff's work hours were actually limited and what a supervisor did to "undermine" her—these allegations cannot support a reasonable inference that Plaintiff was so affected by these actions that a reasonable employee in her position would have been deterred from engaging in protected activity. *See Burlington N.*, 548 U.S. at 68; *Maron*, 508 F. App'x at 230.

Finally, Plaintiff alleges that a manager "raised his hands aggressively toward her, making her feel threatened and unsafe." Am. Compl. ¶ 25. Viewed in the light most favorable to Plaintiff,

this aggressive conduct may have plausibly constituted a materially adverse action. Still, Plaintiff does not allege when this action occurred in relation to her EEOC complaint or any other protected activity, and no additional facts are provided to support an inference that Plaintiff's protected activity caused the manager's aggressive behavior.

Accordingly, Plaintiff's claim in Count II for Title VII retaliation is dismissed.

C. Retaliatory Hostile Work Environment

"To prove a retaliatory hostile workplace environment, the plaintiff must show the same elements as a discriminatory hostile work environment claim but demonstrate that the harassment was based on prior protected activity." *Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 237–38 (D. Md. 2022) (quoting *Vedula v. Azar*, Civ. No. TDC-18-0386, 2020 WL 5500279, at *15 (D. Md. Sept. 11, 2020)). Accordingly, a plaintiff must show that "(1) she experienced unwelcome harassment; (2) the harassment was based on her [prior protected activity]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Id.* at 233, 237–38.

The third element, whether the conduct is "sufficiently severe or pervasive," has both objective and subjective components. *Alston v. Holy Cross Health, Inc.*, Civ. No. DLB-20-2388, 2023 WL 2743332, at *13 (D. Md. Mar. 31, 2023) (citing *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019)). An objectively hostile work environment is one that "a reasonable person would find hostile or abusive." *Id.* (quoting *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81 (1998)). Factors to consider include frequency and severity of the conduct, whether the employee is physically threatened or humiliated, and whether there is an unreasonable interference

with the employee's work performance. *See id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, Plaintiff alleges that over a "prolonged period of time," managers questioned her about the length of a bathroom break, mocked her in front of her co-workers, attempted to limit her hours, and undermined her, and that one manager raised his hands aggressively toward her. *Id.* ¶¶ 19, 22–25, 27. But "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to establish a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (cleaned up). The alleged instances of unwelcome treatment, as described in the Amended Complaint, were not sufficiently frequent or severe to support a plausible hostile work environment claim. The allegation that a manager raised his hands toward Plaintiff supports a reasonable inference of a physical threat, but that single instance, even in combination with the other alleged instances of unwelcome conduct, is not so objectively hostile or abusive that it could have plausibly created an abusive atmosphere at Plaintiff's workplace. Even if the manager's aggressive gesture in combination with other instances of unwelcome treatment could create a hostile work environment, *arguendo*, Plaintiff does not allege when any of this treatment occurred or that the manager or anyone else who engaged in the unwelcome treatment knew about Plaintiff's EEOC complaint. Without such factual detail, one is left to speculate whether the alleged harassment was based on Plaintiff's protected activity.

Accordingly, the Court finds that Plaintiff fails to state a plausible claim for retaliatory hostile work environment in Count III of the Amended Complaint. The claim will be dismissed.[9]

---

[9] Plaintiff also requests that she be permitted to conduct discovery as to her hostile work environment claim. This request is denied. A plaintiff is not entitled to discovery when she fails to state a plausible claim for relief. *See Shields v. Tibbs*, No. 2:23-CV-00491, 2024 WL 1804388, at *4 (S.D.W. Va. Apr. 25, 2024) ("In the absence of a cognizable claim, Plaintiff has no right to any discovery.") (quoting *McCants v. Tolliver*, No. 1:11-cv-0664, 2011 WL 2893058, at *6 (N.D. Ohio July 15, 2011)).

D. Unwarranted Invasion of Personal Privacy

Maryland law recognizes causes of action for unwarranted invasion of personal privacy, including for intrusion upon seclusion and publicity given to one's private life. *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1115 (Md. Ct. Spec. App. 1986) (citing *Carr v. Watkins*, 177 A.2d 841 (Md. 1962), and others).

Although Plaintiff does not specify for which type of invasion of privacy she alleges, the Court construes Count IV as asserting publicity of private facts. To prevail on a claim of publicity of private facts, a plaintiff must show that the "matter publicized is of a kind which (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Furman v. Sheppard*, 744 A.2d 583, 588 (Md. Ct. Spec. App. 2000) (citations omitted). Maryland courts have looked to legal treatises such as the Second Restatement of Torts to define the conduct actionable under this tort. *Id.* The Restatement of Torts defines publicity as follows:

> Publicity . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public. Thus it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons . . . .

Restatement (Second) of Torts § 652D, cmt. a. (1977) (cleaned up).

Here, Plaintiff does not allege specific facts as to what private information has been publicized, who publicized the information, or to whom the information was circulated. Without such facts, Plaintiff fails to state a plausible claim for unwarranted invasion of personal privacy. Accordingly, Count IV shall be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be GRANTED, and the Amended Complaint will be DISMISSED without prejudice.

A separate Order shall issue.

7/24/24
Date

Matthew J. Maddox
United States District Judge